O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON LEVAY, JUDITH WILLIS, and LIONEL BROWN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AARP, INC., AARP SERVICES, INC., UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE INSURANCE COMPANY, NEW YORK LIFE INSURANCE COMPANY and DOES 1 through 60,<br><br>Defendants. | Case No. 17-09041 DDP (PLAx)<br><br>**ORDER RE: DEFENDANTS' MOTIONS TO DISMISS**<br><br>[Dkts. 39, 40, 41] |

Presently before the court are Defendants' Motions to Dismiss. Having considered the parties' submissions and heard oral argument, the court adopts the following Order.

**I.    BACKGROUND**

Plaintiffs Simon Levay, Judith Willis, and Lionel Brown ("Plaintiffs") bring this

putative class action challenging Defendants' marketing of AARP-branded insurance policies. Defendants are AARP, Inc. ("AARP"); AARP Services, Inc. ("ASI"), a wholly owned subsidiary of AARP; UnitedHealth Group, Inc.; UnitedHealthcare Insurance Co., a wholly owned subsidiary of United Health Group, Inc.[1]; and New York Life Insurance Co. ("New York Life") (collectively, "Defendants"). (*See* First Amended Complaint ("FAC"), Dkt. 20, ¶¶ 1-12.)

The FAC alleges that Plaintiffs "are prospective insureds who are at least 65 years of age and have seen and/or heard offers of insurance services, joined AARP and pay membership fees to obtain the advertised insurance, and/or have purchased insurance from United Healthcare and New York Life." (*Id*. ¶ 44.) However, UnitedHealth records show that Simon Levay was the only plaintiff who ever purchased UnitedHealth Medigap insurance coverage.[2] (Sheak Decl., Dkt. 40-7, ¶¶ 14-15.) Similarly, New York Life's policyholder records show that none of the plaintiffs ever purchased New York Life insurance policies. (Horan Decl., Dkt. 39-1, ¶3.)

Plaintiffs allege that Defendants have created an unlawful scheme under which AARP profits from marketing, advertising, endorsing, soliciting, offering, and selling AARP-branded insurance policies on behalf of UnitedHealth and New York Life. (FAC ¶¶ 18-19, 31.) Specifically, Plaintiffs assert that AARP receives a 4.95% "royalty" for each AARP-branded insurance policy sold or renewed on behalf of UnitedHealth and New York Life. (*Id*. ¶ 18, 28.) Plaintiffs contend that these "royalties" are disguised commissions that create hundreds of millions of dollars in profit for AARP, (*Id*. ¶ 17), and that "artificially inflate[]" the price of AARP-branded insurance policies when

---

[1] Defendants UnitedHealth Group, Inc. and UnitedHealthcare Insurance Company are collectively referred to here and in the First Amended Complaint as "UnitedHealth."
[2] Medigap insurance is designed to offer extra coverage to Medicare beneficiaries beyond Medicare benefits, including coverage of copays and deductibles that would otherwise be the patient's responsibility. *See* 42 U.S.C. § 1395ss(g)(1).

2

"competing policies offering identical benefits are offered at a lower cost." (*Id.* ¶¶ 50, 59.) Plaintiffs also allege that AARP's endorsements and branding misleads consumers "into believing that AARP is a non-profit organization when the advertisements, offer, and sale of insurance services are actually by an affiliated for-profit organization [ASI] disguised as the non-profit organization." (*Id.* ¶ 78.)

On the basis of these allegations, Plaintiffs brought suit against Defendants for (1) negligence, (2) violations of California Insurance Code §§ 785 and 787, (3) violations of California's Unfair Competition Law ("UCL"), Cal. Business & Professions Code §§ 17200 *et seq.*, (4) violations of California's False Advertising Law ("FAL"), Cal. Business and Professions Code § 17500 *et seq.*, and (5) financial elder abuse. Defendants now move to dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6).

## II. LEGAL STANDARD

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id.* at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id.* at 678 (citations and internal quotation marks omitted).

However, a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may challenge a complaint's allegations on their face or with facts. *Safe Air for Everyone v.*

*Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual challenge, the court is not required to accept the allegations of the complaint as true and may consider additional evidence outside of the pleadings. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir.2011). Once the moving party has presented evidence showing a lack of subject matter jurisdiction, the burden shifts to "the party opposing the motion [to] furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1309 (citations omitted). If the plaintiff cannot meet its burden of establishing the jurisdiction it seeks to invoke, the court must dismiss the case under Rule 12(b)(1).

### III. DISCUSSION

#### a. Motions to Dismiss Under Rule 12(b)(1)

Defendants argue that this court lacks subject-matter jurisdiction over the action because no plaintiff has standing to sue. Federal courts are courts of limited jurisdiction, whose authority under Article III of the Constitution is restricted to "actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 136 S.Ct. 1540, 1547 (2016).

In this case, Plaintiffs allege that they have been injured by Defendants' marketing of AARP-branded insurance policies. Specifically, Plaintiffs claim that Defendants sold insurance policies that were "artificially inflated in light of AARP's 4.95 percent commission," which AARP received on each policy sold or renewed. (FAC ¶ 17, 59.) Moreover, Plaintiffs contend that AARP's endorsements and branding misled consumers "into believing that AARP is a non-profit organization when the advertisements, offer,

4

and sale of insurance services are actually by an affiliated for-profit organization [ASI] disguised as the non-profit organization."[3] (FAC ¶ 78).

To begin with, the court observes that none of the allegations in the FAC identify injury to Plaintiffs resulting from the advertisement or purchase of insurance policies from Defendant New York Life. Defendants confirm, and Plaintiffs do not contest, that none of the plaintiffs has ever purchased an AARP-branded New York Life policy. (Horan Decl. ¶3). Based on the facts alleged, the court finds Plaintiffs lack standing to pursue claims for damages against Defendant New York Life.

Moreover, to have Article III standing to seek the remedy of prospective injunctive relief, a plaintiff must allege an "actual and imminent," or "*certainly impending*" injury. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). Here, Plaintiffs do not indicate that they intend to purchase AARP-branded policies from New York Life, such that there might exist a "credible threat of real and immediate harm." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010). Mere exposure to the advertisements, or even a bare allegation of intent to purchase, will not do. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 (1992) ("[P]rofession of an intent. . . is simply not enough.") (quotations and alternations omitted). Plaintiffs must, in the case of impending future harm, plead facts sufficient to demonstrate that the injury will "proceed with a high degree of immediacy." *Id*. at 564 n.2. Mere professions of "'some day' intentions—without any description of concrete plans or indeed any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id*. at 564.

---

[3] In order to purchase AARP-branded insurance policy, an individual must first become an AARP member. (*Id.* ¶ 24). Although the AARP membership fee could conceivably factor into the calculation of damages, Plaintiffs do not dispute that the present allegations fail to articulate a claim with respect to whether Defendants misled Plaintiffs about the benefits of AARP membership itself. (*See* AARP Reply at 2.)

5

Applying this standard, the court concludes that Plaintiffs have failed to plead facts demonstrating that any future injury is "actual and imminent," which would provide Plaintiffs with standing to seek injunctive relief against Defendant New York Life. *Davidson*, 889 F.3d at 967. As to the UnitedHealth Defendants, two of the three plaintiffs have never purchased AARP-branded Medigap policies from UnitedHealth, or even expressed the intention of doing so. (Sheak Decl. ¶¶ 14-15.) Therefore, for similar reasons, the court finds that Plaintiffs Judith Willis and Lionel Brown have failed to establish Article III standing to seek relief against the UnitedHealth Defendants.[4]

The only plaintiff to have purchased an AARP-branded Medigap policy is Simon Levay. (Sheak Decl. ¶¶ 14-15). Even assuming that Levay relied upon AARP's representations to his detriment in purchasing a Medigap policy, he does not allege how he will *continue* to be harmed by Defendants' representations, thereby meriting the remedy of prospective injunctive relief. In *Davidson v. Kimberly-Clark*, the Ninth Circuit outlined the limited circumstances under which a "previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief." *Id*. Although a "close question," *id.* at 971, the *Davidson* Court concluded that a previously harmed consumer who had a reasonable desire to purchase a product if it were to perform as advertised, but who could no longer rely upon the "validity of the information advertised," had Article III standing to pursue injunctive relief. *Id*. None of those facts, however, are present here.

Therefore, the court grants Defendants' motion to dismiss for lack of subject-matter jurisdiction with respect to Plaintiffs Judith Willis and Lionel Brown. It also

---

[4] The court will not, at this preliminary stage, evaluate the standing of prospective class members or the definition of the prospective class. Rather, the court bases its analysis on the standing of the named plaintiffs. *See Bates v. United Parcel Servs., Inc.*, 511 F.3d 974, 987 (9th Cir. 2007).

dismisses Plaintiffs' request for injunctive relief, and Plaintiffs' claims against Defendant New York Life.

### b. Motions to Dismiss Under Rule 12(b)(6)

Because Plaintiffs have not indicated whether amendment would cure the various standing deficiencies identified above, the court proceeds to examine only whether Levay's allegations against the UnitedHealth Defendants state a claim for relief under Rule 12(b)(6).

### i. California Insurance Code Sections 785 and 787

Plaintiffs contend that Defendants' actions are in violation of California Insurance Code Sections 785 and 787. Even assuming that Plaintiffs have a private right of action to enforce these code provisions, however, they do not apply to the Medigap insurance policy that Levay purchased from UnitedHealth.

Section 785 states: "Except where explicitly provided to the contrary, this article shall not apply to . . . Medicare supplement insurance as defined in subdivision (m) of Section 10192.4."[5] Cal. Ins. Code § 785. Subdivision (m), in turn, defines Medicare supplement insurance, to include, subject to certain exceptions, a policy "advertised, marketed, or designed primarily as a supplement to reimbursements under Medicare." Cal. Ins. Code § 10192.4(m). The parties do not dispute that Levay's Medigap insurance policy falls within the definition of "Medicare supplement insurance," *id.*, and is therefore excluded from the scope of Sections 785 and 787.

Furthermore, there is no reason to believe that Levay has standing to enforce these code provisions with respect to other kinds of insurance policies. *See supra* Part III.a. Article III standing requirements apply with equal force to state law causes of action brought in federal court. *See Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001). Accordingly, Levay cannot rely upon the bare allegation that a misleading advertisement

---

[5] Sections 785 and 787 are both part of Article 6.3 of the California Insurance Code.

7

exists, or that UnitedHealth has a statutory duty to prospective insureds, in order to create an "actual or imminent" injury to himself for Article III standing purposes. *Davidson*, 889 F.3d at 967. Therefore, the court dismisses with prejudice Levay's insurance code claims against the UnitedHealth Defendants.[6]

### ii. UCL and FAL Claims

For the purposes of statutory standing, both the UCL and the FAL require that Levay plead an economic injury related to the purchase of his AARP-branded Medigap policy. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013); *see also* Cal. Bus. & Prof. Code § 17204 (limiting UCL actions to those brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"). "To properly plead an economic injury, a consumer must allege that she was exposed to false information about the project purchased, which caused the product to be sold at a higher price, and that she 'would not have purchased the goods in question absent this misrepresentation.'" *Davidson*, 889 F.3d at 966.

In *Davidson*, the Ninth Circuit concluded that a plaintiff adequately alleged economic injury when the complaint stated that, "had [the defendant] not misrepresented (by omission and commission) the true nature of [the advertised product," the plaintiff would not have purchased the product at a premium price. *Id.* at 966. The FAC contains similar allegations here:

> But for Defendants' deceptive and unlawful acts, Plaintiffs and Putative Class would not have been required to join AARP to obtain the advertised

---

[6] To the extent Plaintiffs' other claims are premised on violations of Sections 785 and 787, they too must be dismissed. In particular, Plaintiffs' negligence claim is exclusively premised on the existence of "statutory duties" derived from the insurance code. (FAC ¶ 63; *see also* UnitedHealth MTD at 25; Trans. at 35:3-6, Dkt. 56). Similarly, Plaintiffs' UCL claim is based, at least in part, on violations of the insurance code. As currently pled, these claims will rise and fall with Plaintiffs' insurance code claims.

8

> insurance, would not have had to pay the AARP membership fees, would not have had to pay AARP the illegal commission as part of their purchase and/or renewal of their AARP policies, and would not of [sic] had to pay the high rates for the AARP branded insurance when competing policies offering identical benefits are offered at a lower cost. (FAC ¶ 30.)

The court concludes that these allegations, considered together with the rest of the FAC, adequately set forth a basis for economic injury under the UCL and FAL.

When, as here, the challenged conduct under the UCL and FAL involves "misrepresentation and deception," a plaintiff must also plead actual reliance. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010). In the UCL context, "actual reliance . . . is inferred from the misrepresentation of a material fact." *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 229 (2013). Defendants contend, however, that "no reasonable consumer could have been deceived into purchasing AARP-branded Medigap coverage at regulator-approved rates—over allegedly less expensive policies—based on the characterization of United's royalty payment to AARP." (UnitedHealth MTD at 14.)

The court need not address this issue, however, because Plaintiffs have conceded that their theory of injury does not concern the price of the insurance policy *per se*, but instead centers on the membership fee paid to AARP. (*See* Opp. at 9.) Specifically, Plaintiffs have declared that "this case is not about the payment of fees to an unlicensed insurance agent, but rather the advertising, offering, and selling of insurance via a perceived non-profit organization to vulnerable elder California consumers." (Opp at 20.) In keeping with this representation, counsel for Plaintiffs stated during oral argument that that the only damages sought here concern the payment of AARP membership fees. (Trans. at 39:2-6, 39:20-40:2; 40:20-41:1, Dkt. 56.) Put differently, Plaintiffs' prevailing theory of injury is that consumers were "duped" into joining AARP and paying membership fees in order to access the AARP-branded policies from UnitedHealth, who they believed had been selected by AARP as "the best insurance company for all of its

members when in actuality it [was] the for-profit AARP company [ASI] making a commission on each sale it makes." (FAC ¶¶ 20, 81.)

Finally, Defendants contend that Levay must have actually seen the allegedly misleading representations before purchasing his AARP-branded Medigap policy in order to plead reliance. (UnitedHealth MTD at 17). *See McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1052 (C.D. Cal. 2014) (dismissing UCL claim where the plaintiff had not plead that he "ever saw any alleged misrepresentation"); *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017) (collecting cases where courts have dismissed FAL and UCL claims for failure to plead that plaintiffs had seen the challenged representations). However, Levay has not alleged that he saw any of the advertisements or representations of AARP-branded insurance that he now challenges. Therefore, the court dismisses Levay's UCL and FAL claims against UnitedHealth on this basis with leave to amend.

### iii. Fraud Allegations

Defendants contend that the claims in the FAC do not plead fraud with specificity, as required under Rule 9(b). *See* Fed. R. Civ. P. 9(b). Although a complaint need not mention the word "fraud" to be subject to Rule 9(b)'s heightened pleading requirement, it must contain allegations "that necessarily constitute fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

In California, the elements of a fraud claim are "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (quotations omitted). Here, the FAC alleges that Defendants falsely represented information about AARP-branded insurance policies; that Defendants did so knowingly; that Defendants intended to defraud consumers; and that consumers relied upon Defendants' representations. *See, e.g.*, FAC ¶ 18 ("Defendants, together, have orchestrated an elaborate scheme whereby AARP markets, advertises, endorses, solicits, offers, and sells AARP branded insurance"); *id*. ¶ 19 ("Defendants have

10

deceptively and unlawfully schemed against senior citizens who put their trust in the AARP name"); *id*. ¶ 45 ("Defendants mislead and deceive . . . by advertising, marketing, and insurance services and products with the AARP logo, brand and name"); *id*. ¶ 59 ("Plaintiffs and the class were . . . deceived into joining AARP . . . and taken advantage of by Defendants' insurance scheme to deceive and manipulate persons over 65 years of age."); *id*. ¶ 78 ("Defendants violated and continue to make untrue and misleading statements to senior citizens with the intent to induce them to purchase insurance."); *id*. ¶ 81 ("Defendants committed financial elder abuse by using misrepresentations to trick and deceive Plaintiffs into purchasing insurance policies branded and endorsed by AARP which is not only illegal, but improper as it is used to intentionally and deliberately confuse . . . ."). In one case, Plaintiffs expressly label this conduct "fraud." *Id.* ¶ 84 ("Defendants planned and engaged in their pattern of financial elder abuse with malice, oppression, and fraud. . . .").

The court finds that the allegations in the FAC necessarily constitute fraud. When a plaintiff alleges a "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," a claim sounds in fraud and is subject to Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). In some circumstances, however, "fraud is not an essential element of the claim." *Id*. If so, "the proper route is to *disregard* averments of fraud for not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." *Id*. at 1105.

The question here is whether the fraud-based allegations in the FAC are part of a "unified course of fraudulent conduct" central to Defendants' theory of liability, rather than non-essential elements of the claims. *Id*. at 1103. Stripped of the fraudulent allegations, however, the court finds that the FAC fails to state a claim for relief under the

11

UCL or FAL, or for financial elder abuse.[7] If Levay is to retain these allegations in the complaint, he must plead fraud with specificity, and allege the "who, what, when, where, and how" of Defendants' misconduct.[8] *Id.* at 1106. Put differently, he must do more than "adequately plead that reasonable consumers are likely to be deceived." *Davidson*, 889 F.3d at 964. Rather, he must "set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106.[9] Accordingly, the court dismisses the remaining claims for failure to allege fraud with specificity pursuant to Rule 9(b).

### c. Additional Arguments Favoring a Dismissal or Stay

Although the court grants the motion to dismiss, it must address two additional theories of dismissal that may influence whether this action should instead be stayed or dismissed with prejudice. These two theories ask whether the present action is barred by the first-to-file doctrine or, alternatively, by the filed-rate and primary jurisdiction doctrines.

---

[7] Although one can plead financial elder abuse by claiming that property was taken "for a wrongful use or with an intent to defraud," Cal. Welf. & Inst. Code 15610.30 (a)(1), the allegations here rely upon the latter theory. (*See* FAC ¶¶ 81, 84.)

[8] Plaintiffs claim that this court did not dismiss a UCL claim for failure to plead fraud with specificity in a similar case, *Friedman v. AARP*, No. 14-56765. Yet that outcome is attributable to the fact that the court in *Friedman* dismissed the action on other dispositive grounds and had no need to reach the issue of whether dismissal for failure to satisfy Rule 9(b) was appropriate.

[9] The court notes that there is some imprecision surrounding the attribution of conduct among Defendants, specifically AARP and ASI. For example, Plaintiff alleges that "AARP markets, advertises, endorses, solicits, offers, and sells AARP branded insurance." (FAC 18.) Yet this statement appears to be contravened by later statements that it is not AARP but ASI "disguised as the non-profit organization" that "actually" makes the "advertisements, offer, and sale of insurance services." (FAC ¶ 78.) *See also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (Rule 9(b) "does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.").

12

### i. First-to-File Doctrine

The first-to-file doctrine traditionally operates when similar actions are pending in different courts, or before different judges. *See, e.g., Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982); *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997); *Henderson v. JPMorgan Chase Bank*, No. CV 11-3428 PSG PLAX, 2011 WL 4056004, at *2 (C.D. Cal. Sept. 13, 2011), *reversed on other grounds*, 651 F. App'x. 669 (9th Cir. 2016). Defendants claim that the first-to-file doctrine should lead to a stay or dismissal of this case because it is substantially similar to an earlier case, *Friedman v. AARP*, No. 14-56765, pending before the same judge.

While the purpose of the first-to-file doctrine is to enhance "efficiency and judicial economy," these concerns are typically mitigated when the actions are pending before the same judge. *Cedars-Sinai Med. Ctr.*, 125 F.3d at 769. For this reason, the court concludes that the first-to-file doctrine does not warrant dismissal or a stay of the present action. Nonetheless, the court reserves the right to determine at a later stage in the proceedings whether it would be appropriate for case management reasons to stay or consolidate this case with the putative class action in *Friedman*.

### ii. Filed Rate & Primary Jurisdiction Doctrines

In *Friedman v. AARP*, 283 F. Supp. 3d 873, 878-79 (C.D. Cal. 2018), this court held that neither a state filed-rate doctrine nor primary jurisdiction doctrine barred the plaintiff's challenges to the marketing of AARP-branded Medigap insurance policies. The court reaches the same result here.

California courts are split as to whether a general state filed-rate doctrine exists. *Compare Fogel v. Farmers Group, Inc.*, 160 Cal. App. 4th 1403, 1418 (2008), *with MacKay v. Superior Court*, 188 Cal. App. 4th 1427, 1449 (2010). Under a state filed-rate doctrine, "rates duly adopted by a regulatory agency are not subject to collateral attack in court." *MacKay*, 188 Cal. App. 4th at 1448. Even assuming that this doctrine exists with respect to

13

state regulator-approved rates, it does not bar actions—as here—where "the underlying conduct challenged was not the charging of an approved rate." *Id.* at 1450.

As in *Friedman*, the court deems that the claims in this case are essentially about false or misleading advertising, and not challenges to the reasonableness of the actual rates that were approved by the California Department of Insurance ("DOI"). The gravamen of the FAC is that Defendants "illegally advertise for insurance services and products," (*id*. ¶ 29); "deceptively and unlawfully schemed against senior citizens," (*id*. ¶ 19); and engage in "improper, deceptive, and misleading marketing advertisements," (*id*. ¶ 14). *See also id*. ¶ 26 (collecting internet, television, and print materials advertising AARP-branded insurance). Therefore, the DOI's rate "determination is different from what is at issue here—whether the lender . . . mischaracterize[d] the nature of the charges." *Canon v. Wells Fargo* No. C-12-1376 EMC, 2014 WL 324556 at *5 (N.D. Cal. Jan. 29, 2014). Under this theory of recovery, the adjudication of Plaintiffs' claims would not improperly encroach on the DOI's rate-making authority.

For similar reasons, the court concludes that the primary jurisdiction doctrine does not bar Levay's claims. The doctrine of primary jurisdiction doctrine operates when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Farmers Ins. Exchange v. Superior Ct*., 2 Cal. 4th 377, 390 (1992) (en banc). The court finds that the claims raised in the FAC are "within the conventional competence of the courts," and therefore do not require the specialized ratemaking expertise of the DOI. *Id*. at 390. For this reason, the court declines to refer this case to the DOI under the primary jurisdiction doctrine.

**IV. CONCLUSION**

For the reasons stated above, Defendants' Motions to Dismiss are GRANTED. Plaintiff shall file an amended complaint within fourteen (14) days after the date of this Order, or by July 26, 2018.

14

**IT IS SO ORDERED.**

Dated: July 12, 2018

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE