O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON LEVAY, JUDITH WILLIS, and LIONEL BROWN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AARP, INC., AARP SERVICES, INC., UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE INSURANCE COMPANY, NEW YORK LIFE INSURANCE COMPANY and DOES 1 through 60,<br><br>Defendants. | Case No. 17-09041 DDP (PLAx)<br><br>**ORDER RE: DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**<br><br>[Dkts. 59, 62, 65] |

Presently before the court are Defendants' Motions to Dismiss the Second Amended Complaint. Having considered the parties' submissions and heard oral argument, the court adopts the following Order.

## I. BACKGROUND

Plaintiffs Simon Levay, Judith Willis, and Lionel Brown (collectively, "Plaintiffs") bring this putative class action challenging Defendants' marketing of AARP-branded insurance policies. Defendants are AARP, Inc. ("AARP"); AARP Services, Inc. ("ASI"), a wholly owned for-profit subsidiary of AARP; UnitedHealth Group, Inc.; UnitedHealthcare Insurance Co., a wholly owned subsidiary of United Health Group, Inc.[1]; and New York Life Insurance Co. ("New York Life") (collectively, "Defendants"). (*See* Second Amended Complaint ("SAC"), Dkt. 59, ¶¶ 1, 3-7.)

The SAC alleges that Plaintiffs are AARP members and "prospective insureds who are at least 65 years of age and have seen and/or heard the advertisements, solicitations, marketing materials, and offers of AARP branded insurance services and products." (*Id*. ¶ 40.) Plaintiffs allege that, as a result of being AARP members, they are "at an increased risk of being targeted with unlawful and unfair advertisements" for AARP-branded insurance policies. (*Id*. ¶ 13.)

Specifically, Plaintiffs claim that AARP's endorsement of the insurance policies is misleading because they "presume the endorsement is AARP's actual stamp of approval for the best senior insurance company." (*Id*. ¶ 22.) The SAC alleges that Plaintiffs "placed their trust in" the AARP name, while AARP "sold their name to the highest-bidding insurance companies," Defendants UnitedHealth and New York Life. (*Id*. ¶ 43.) Furthermore, the SAC alleges that "[a] primary reason persons join AARP is for the numerous discounts available to AARP members," and that Plaintiffs "relie[d] on the presumption that the insurance services offered, especially the AARP-branded insurance policies[,] are at a discounted rate." (*Id*. ¶ 20.)

---

[1] Defendants UnitedHealth Group, Inc. and UnitedHealthcare Insurance Company are collectively referred to here and in the Second Amended Complaint as "UnitedHealth."

2

The SAC alleges violations of (1) California Insurance Code Sections 785 and 787, (2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and (3) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

Defendants now move to dismiss the SAC pursuant to Rules 12(b)(1) and Rule 12(b)(6).

## II. LEGAL STANDARD

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id.* at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id.* at 678 (citations and internal quotation marks omitted).

However, a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may challenge a complaint's allegations on their face or with facts. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual challenge, the court is not required to accept the allegations of the complaint as true and may consider additional evidence outside of the pleadings. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Once the moving party has presented evidence showing a lack of subject-matter jurisdiction, the burden shifts to "the party opposing the motion [to] furnish affidavits or other

3

evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039 (citations omitted). If the plaintiff cannot meet its burden of establishing the jurisdiction it seeks to invoke, the court must dismiss the case under Rule 12(b)(1).

## III. DISCUSSION

### a. Motions to Dismiss Under Rule 12(b)(1)

To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 136 S.Ct. 1540, 1547 (2016). Defendants argue that this court lacks subject-matter jurisdiction because Plaintiffs have not suffered any injury attributable to Defendants.

In the SAC, Plaintiffs have modified their theory of injury to conform to their previous representations that the only injury suffered by Plaintiffs is the cost of their AARP memberships. (*See* Trans. at 39:2-6, 39:20-40:2; 40:20-41:1, Dkt. 56.) In order to purchase an AARP-branded insurance policy, an individual must first become an AARP member. Not all Plaintiffs have purchased AARP-branded policies. (Order, Dkt. 58, at 2.) However, all Plaintiffs have purchased AARP memberships. (SAC ¶¶ 13, 27.)

For Plaintiffs to prevail under this theory of injury, a necessary inference must be that Plaintiffs purchased or renewed their AARP memberships *as a result of* having been exposed to advertising for AARP-branded insurance that required AARP membership.

However, the SAC does not support this inference. To the contrary, it states that, "as a result of being" AARP members, Plaintiffs are "at an increased risk of being targeted with unlawful and unfair advertisements by [Defendants] for insurance goods and services." (SAC ¶ 13.) That is, "Defendants target [AARP members over 65 years old] with frequent endorsements, advertisements, and cause-related marketing tools to offer and sell exclusive AARP-branded insurance products and services . . ." (SAC ¶ 23.)

4

These statements imply that Plaintiffs are exposed to the misleading advertisements *after* having decided to join AARP. That is, Defendants target existing AARP members with the advertisements. (SAC ¶ 23.) However, Plaintiffs would not be entitled to the return of their AARP membership fees if they were exposed to the insurance advertisements only *after* having already decided to purchase or renew their AARP memberships.

For this reason, the court finds that Plaintiffs have not articulated a viable theory of injury. However, the court grants Plaintiffs a final opportunity to amend the SAC to state a theory of injury that corresponds to the measure of damages they seek, namely the the cost of the AARP membership fees paid by Plaintiffs.

In addition, Plaintiffs must establish standing for each form of relief sought. *See Friends of the Earth v. Laidlaw Env. Servs., Inc.*, 528 U.S. 167, 185 (2000). To seek the remedy of prospective injunctive relief, a plaintiff must allege an "actual and imminent" injury. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). "Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992). In its prior Order, the court instructed Plaintiffs that they must allege how they "will *continue* to be harmed by Defendants' representations." (Dkt. 58 at 6.) As Plaintiffs have not amended the Complaint to plead imminent prospective harm, the court concludes that Plaintiffs lack standing to seek injunctive relief.[2]

---

[2] Plaintiffs appear to espouse, for the first time, a theory of injury based in invasion of privacy arising from Defendants' marketing of AARP-branded insurance policies to AARP members. (SAC ¶ 23.) However, this generally alleged harm is not one that corresponds to any of Plaintiffs' claims and, furthermore, would not be redressed by the injunctive relief sought, as Defendants could still continue to market their policies to AARP members, in accordance with the UCL and FAL.

5

Accordingly, the court grants Defendants' Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.

### b. Motions to Dismiss Under Rule 12(b)(6)

Having found that Plaintiffs fail to satisfy the threshold requirement for Article III standing, the court examines whether the allegations in the SAC state a claim, such that further amendment is warranted.

#### i. California Insurance Code Sections 785 and 787

In its prior Order, the court concluded that California Insurance Code §§ 785 and 787 do not apply to AARP-branded Medigap insurance. (Dkt. 58 at 8.) The same line of reasoning does not extend to AARP-branded life insurance policies, which may be subject to these insurance provisions. Even so, Defendants argue that there is no private right of action for these code provisions. Specifically, Defendants reason that nothing in the text of the provisions evinces a legislative intent to create a private right of action. Because Plaintiffs fail to respond to Defendants' argument, the court finds that Plaintiffs have waived or abandoned their claims under Sections 785 and 787.

Defendants also argue that Plaintiffs cannot maintain a § 787 claim because the AARP-branded policies were, in fact, endorsed by AARP. (SAC ¶¶ 16, 50-51.) Insurance Code § 787(c) states that "[a]dvertisements shall not employ words, letters, initials, symbols, or other devices that are so similar to those used by . . . a nonprofit or charitable institution, . . . senior organization, or other insurer that they could have the capacity or tendency to mislead the public." Examples of misleading conduct include using materials that imply that "[t]he advertiser is the same as, is connected with, or is endorsed by" a non-profit or senior organization. Ins. Code § 787(c)(2). Thus, § 787 prohibits behavior when advertisements are made to appear as if they have the imprimatur of a trusted organization when, in fact, they do not. Here, there is no dispute that the AARP-branded policies had the endorsement of AARP. (SAC ¶ 16 ("AARP expressly endorses the

6

insurance goods and services.")). Because Plaintiffs do not respond to these arguments, the court deems the issue waived.

Accordingly, the Court dismisses Plaintiffs' insurance code claims with prejudice.

### iii. Dismissal of Insurance Carrier Defendants

Having dismissed Plaintiffs' insurance code claims, the court observes that Plaintiffs' remaining claims fall under the UCL and FAL. The only remedies available to Plaintiffs under the UCL and FAL are injunctive relief and restitution. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999). The court earlier determined that Plaintiff is not eligible for injunctive relief. *See supr*a Part III.a.

Moreover, because Plaintiffs seek only a return of their AARP membership fees, they are not eligible for restitution against Defendants New York Life or UnitedHealth. Restitution "requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011). Plaintiffs do not indicate that the insurance carrier defendants, in addition to AARP, received any "corresponding gain" as a result of the sale of AARP memberships. *Id.* Nor do they respond to Defendants' arguments on this score. *See Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.5 (9th Cir. 2005) (plaintiff abandoned claims by failing to raise them in opposition). For these reasons, the court concludes that Plaintiffs lack standing to seek restitution of their membership fees from the insurance carrier defendants. *See Friends of the Earth*, 528 U.S. at 185 ("[A] plaintiff must demonstrate standing separately for each form of relief sought.")**.**

Accordingly, the court dismisses with prejudice Defendants United Health and New York Life.

### ii. Statutory Standing under the UCL and FAL

Defendants contend that the allegations are also insufficient to a state claim because Plaintiffs lack statutory standing under the UCL and FAL. Both the UCL and FAL require that "economic injury come 'as a result of' the unfair competition or a

7

violation of the false advertising law." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011). Like in *Kwikset*, Plaintiffs' "theory of the case is that [Defendants] engaged in misrepresentations and deceived customers" into purchasing their products or services. *Id.* at 326 n.9. This means that Plaintiffs who are "proceeding on a claim of misrepresentation . . . must demonstrate actual reliance on the allegedly deceptive or misleading statements." *Id.* at 326. Typically, "actual reliance . . . is inferred from the misrepresentation of a material fact." *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 229 (2013).

Here, the court discerns two primary theories of misrepresentation in the SAC. The first is that AARP represented that it "endorsed" the insurance policies, even though its endorsement did not mean that those insurance policies were vetted as superior. (SAC ¶ 22.) Plaintiffs contend that, because of AARP's reputation as a non-profit "advocate of the nation's seniors," (*id.* ¶ 15), they thought "the endorsement [was] AARP's actual stamp of approval for the best senior insurance company when in fact it [was] only a stamp indicating the winner of the bidding war," (*id.* ¶ 22). At the pleading stage, the court concludes that AARP's endorsement was a material fact and that reasonable consumers could have been misled about the endorsement.[3] *See Kwikset Corp.*, 51 Cal. 4th at 323-323.

In addition, Plaintiffs espouse the new theory that they mistakenly believed the AARP-branded policies were offered at a discount. The entirety of this theory is pled as follows:

> "A primary reason persons join AARP is for the numerous discounts available to AARP members. . . . AARP's membership benefits, amongst

---

[3] Standing alone, the allegation that the insurance policies were actually marketed or offered by ASI, AARP's for-profit branch, rather than by the non-profit AARP does not create a cognizable injury. (SAC ¶ 73.) If AARP's endorsements were instead based on merit, then the structure of the organization's tax liabilities would not make a difference. The underlying issue is whether AARP's endorsement was misleading to consumers.

8

>numerous savings, discounts, and coupons are insurance services. Accordingly, the Class believes and reasonably relies on the presumption that the insurance services offered, especially the AARP-branded insurance policies are at a discounted rate." (SAC ¶ 20.)

It is not reasonable to assume that, because certain AARP services are discounted, all AARP services are discounted. Nor do Plaintiffs point to any representation to this effect made by Defendants. As a result, the court finds Plaintiffs' theory concerning the discounted status of AARP policies too attenuated to merit relief.

### iii. UCL Claim

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. For a UCL claim based upon unlawful business practices, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Tel. Co.*, 20 Cal. 4th 169, 180 (1999). Here, Plaintiffs allege that the UCL's unlawful prong was violated because Defendants' conduct was contrary to California Insurance Code §§ 785 and 787 and the Internal Revenue Code.

As to the Internal Revenue Code challenge, the court concludes that this is not a viable basis for Plaintiffs' UCL claim. As a preliminary matter, the court notes that it did not grant Plaintiffs leave to amend in order to plead this additional basis for unlawful conduct. Even so, Plaintiffs' allegations on this score are cursory. The SAC generally alleges that AARP has violated I.R.C. §§ 511, 512, and 513 by failing to characterize its insurance profits as non-taxable income.[4] (SAC ¶ 65.) Yet Plaintiffs cannot link this conduct to a viable theory of standing. Even if Defendants' tax conduct were unlawful, Plaintiffs cannot show how they have been injured by it, or that a court ruling on this issue would remedy Plaintiffs' alleged injury regarding their purchase of AARP

---

[4] The SAC also contains a citation to IRC § 513.201, which does not exist.

memberships. Plaintiffs also fail to address Defendants' arguments concerning the revenue code, and have thus waived the issue.

The court earlier determined that Plaintiffs abandoned their claim under Insurance Code § 787. *See supra* Part III.b.i. As a result, the sole basis for Plaintiffs' claim under the unlawful prong of the UCL is a violation of § 785, a code provision that applies only with respect to AARP-branded life insurance policies.[5]

### iv. Fraud Allegations

Finally, Defendants contend that the claims in the FAC do not plead fraud with specificity, as required under Rule 9(b). *See* Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s heightened pleading standards apply to . . . state law-causes of action.").

A complaint need not mention the word "fraud" to be subject to Rule 9(b)'s heightened pleading requirement, but it must contain allegations "that necessarily constitute fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). When a plaintiff alleges a "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," a claim sounds in fraud and is subject to Rule 9(b). *Id*. at 1105.

In California, the elements of a fraud claim are "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (quotations omitted). Plaintiff's primary theory is that Defendants misled consumers about the meaning of AARP's endorsement. Plaintiffs maintain that the insurance advertisements were "false," and that Defendants made

---

[5] This insurance code provision states that "all insurers, brokers, agents, and others engaged in the transaction of insurance owe a prospective insured who is 65 years or older, a duty of honesty, good faith, and fair dealing." Cal. Ins. Code § 785.

10

these "untrue . . . statements to senior citizens with the intent to induce them to purchase insurance." (SAC ¶ 73.)

Taken as a whole, the court finds that allegations in the SAC set forth a "unified source of fraudulent conduct." *Id.* at 1103. However, these allegations do not satisfy the requirements of Rule 9(b). For example, Plaintiffs generally allege they have "seen and/or heard the advertisements, solicitations, marketing materials, and offers of AARP branded insurance services and products." (*Id*. ¶ 40.) Accordingly, the court dismisses Plaintiff's claims with leave to amend in order for plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct. *Id.* at 1106.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss are GRANTED. In particular, the court dismisses Defendants New York Life and UnitedHealth with prejudice. The court further dismisses Plaintiffs' claims under Insurance Code §§ 785 and 787 with prejudice.

Plaintiffs shall file an amended complaint within fourteen (14) days of the date of this Order, or by November 16, 2018. No amendments are permitted beyond those for which the court has expressly granted leave to amend.

**IT IS SO ORDERED.**

Dated: 11/2/18

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE

11