THE HOMAMPOUR LAW FIRM, PC
ARASH HOMAMPOUR (State Bar No. 165407)
DANIELLE LINCORS (State Bar No. 285508)
15303 Ventura Boulevard, Suite 1450
Sherman Oaks, California 91403
Phone: (323) 658-8077 | Fax: (323) 658-8477

SCHIMMEL & PARKS, APLC
ALAN SCHIMMEL (State Bar No. 101328)
MICHAEL PARKS (State Bar No. 154531)
15303 Ventura Boulevard, Suite 650
Sherman Oaks, California 91403
Phone: (818) 464-5061 | Fax: (818) 464-5091

Attorneys for Plaintiffs and Putative Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SIMON LEVAY, JUDITH WILLIS and LIONEL BROWN, Individually and on Behalf of all Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> AARP, INC., AARP SERVICES, INC., UNITEDHEALTH GROUP, INC., UNITEDHEALTHCARE INSURANCE COMPANY, NEW YORK LIFE INSURANCE COMPANY and DOES 1 through 60, inclusive, <br><br> Defendants. | **CASE NO.: 2:17-cv-09041-DDP(PLAx)** <br><br> **PLAINTIFFS' OPPOSITION TO AARP DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: February 4, 2019 <br> Time: 8:30 a.m. <br> Dept.: 9C <br><br> *Complaint filed on November 17, 2017* <br> *Case Assigned to Judge Pregerson,* <br> *Courtroom, 9C* |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs hereby submit the following Opposition to the Motion to Dismiss of Defendants AARP, INC. and AARP SERVICES, INC. (herein collectively referred to as the "AARP Defendants" unless otherwise indicated). This Opposition is based on the Memorandum of Points and Authorities, upon all matters as may be judicially

*THE HOMAMPOUR LAW FIRM*
*A PROFESSIONAL LAW CORPORATION*
*15303 VENTURA BOULEVARD · SUITE 1450*
*SHERMAN OAKS, CALIFORNIA 91403*
*PHONE (323) 658-8077 · FAX (323) 658-8477*

noticed, upon all the records, files and pleadings in this case, and upon all such other and further evidence as may be presented at the hearing which the court deems appropriate.

DATED:     January 14, 2019              THE HOMAMPOUR LAW FIRM
                                         A Professional Law Corporation


                                  By:    */s/ Danielle Lincors*
                                         Arash Homampour,
                                         Danielle Lincors,
                                         Attorneys for Plaintiffs and Putative Class

DATED:     January 14, 2019              SCHIMMEL & PARKS, APLC


                                  By:    */s/ Michael Parks*
                                         Alan Schimmel,
                                         Michael Parks,
                                         Attorneys for Plaintiffs and Putative Class

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION................................................... 1

II.  FACTUAL BACKGROUND......................................... 2

    A.   AARP Defendants Intend To Use Their Not-For-Profit "Trust" Brand To Mislead Consumers To Join AARP And Purchase "Endorsed" Products Purely For Profit. ................................. 2

    B.   The TAC Adds The Specificity Of Facts Detailing AARP Defendants' Misleading And Fraudulent Advertising And Target Marketing That Induced Plaintiffs and Consumers With Their AARP Brand And Stamp Of Approval To Join And/Or Renew With AARP.......... 3

III. LEGAL STANDARD............................................... 8

IV.  LEGAL ARGUMENT. ........................................... 9

    A.   AARP Defendants Have Not Brought A Motion Under FRCP 12(b)(1) For Lack Of Standing, However, Their Motion Argues Against This Court's Exercise Of Jurisdiction Under Article III............... 9

    B.   Plaintiffs' TAC States A Claim For Violations Of The UCL And The FAL................................................... 10

V.   CONCLUSION................................................... 20

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*
   556 U.S. 662, 664 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 14

*Bank of the West v. Super. Ct.*
   2 Cal. 4th 1254, 1266 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*
   20 Cal. 4th 163, 180 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Chapman v. Skype, Inc.*
   220 Cal. App. 4th 217, 230–31 (Cal. Ct. App. 2013).. . . . . . . . . . . . . . .  13

*Charnay v. Cobert*
   145 Cal. App. 4th 170, 184 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Colgan v. Leatherman Tool Group, Inc.*
   135 Cal.App.4th 663, 679 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Committee on Children's Television, Inc. v. General Foods Corp.*
   35 Cal.3d 197 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 18, 19

*Concha v. London*
   62 F.3d 1493, 1503 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Cooper v. Pickett*
   137 F.3d 616, 625 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Doe v. Superior Court*
   237 Cal. App. 4th 239, 244 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Engalla v. Permanente Med. Group, Inc.,*
   15 Cal. 4th 951, 974 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Hanberry v. Hearst Corp.*
   276 Cal.App.2d 680 (1969)14, 15

*Hinojos v. Kohl's Corporation*
   718 F.3d 1098 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 17

*Kasky v. Nike, Inc.*
   27 Cal.4th 939, 950 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Kwikset Corp. v. Superior Court*
   51 Cal. 4th 310 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 10, 17

*Loeffler v. Target Corp.*
   58 Cal. 4th 1081, 1125 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Love v. United States*
   915 F.2d 1242, 1245 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . .  8

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

*Moore v. Kayport Package Express, Inc.*
   885 F.2d 531, 540 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 13

*N. Star Int'l v. Ariz. Corp. Comm'n.*
   720 F.2d 578, 581 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Oakland Raiders v. National Football League,*
   131 Cal. App. 4th 621, 636 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Page v. Tri-City Healthcare Dist.*
   860 F. Supp. 2d 1154, 1171 (S.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . .  9

*Pareto v. F.D.I.C.*
   139 F.3d 696, 699 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Semegen v. Weidner*
   780 F.2d 727, 731 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Vess v. Ciba-Geigy Corp.*
   317 F.3d 1097, 1103-1104 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . .  8

*White v. Lee*
   227 F.3d 1214, 1242 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Williams v. Gerber Prods. Co.*
   552 F.3d 934, 938 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Wilson v. Hewlett-Packard Co.,*
   668 F.3d 1136, 1146-1147 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . .  14

## STATUTES and RULES

*Cal. Ins. Code § 785.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Cal. Ins. Code § 787* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Fed. R. Civ. Proc. 9(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Fed. R. Civ. Proc. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

## OTHER AUTHORITIES

*28 U.S.C. § 1447(c)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs have been clear of their grievances from the inception of this action that AARP Defendants have abused seniors' trust in them and the AARP brand, and that senior consumers who were targeted and joined AARP are entitled to seek remedies for harms caused by AARP Defendants' false, unfair and misleading business practices that put profits over seniors. Plaintiffs' Third Amended Complaint ("TAC" [Dkt. 80]) sets forth all of the necessary elements to state a claim for violation of the UCL and FAL claim against AARP Defendants.  Plaintiffs were induced into membership and transactional relationships with AARP and its endorsed insurers based on misrepresentations by AARP under the guise of its not for profit *trust* brand, and the material concealment of AARP's for profit motive and "pay to play" scheme with insurers to push certain products and services onto its senior members that would make insurers and AARP's "for-profit" arm, significant profits. The not-for-profit arm of AARP has misrepresented itself to senior consumers like Plaintiffs and it has created a rigged marketplace meant to induce memberships and purchases of AARP "endorsed" products under false pretenses and the belief that AARP is looking out for seniors.  Instead, AARP Defendants are looking out on making a profit for themselves.

Plaintiffs' TAC has added many specific paragraphs of  facts to plead each of the Plaintiffs' justifiable and detrimental reliance on AARP-branded insurance advertisements and endorsements to induce them to join and/or renew their AARP membership and, in the case of two of the Plaintiffs, to buy AARP-branded and endorsed insurance products because of the AARP endorsement.  Plaintiffs state that they will continue to be imminently harmed and targeted with AARP-branded products and endorsements because this targeting is done through "trust-branding" advertisements containing the not-for-profit AARP logo, while concealing that AARP's interests are driven by "for profit" business deals by selling the AARP brand and "endorsement" to the highest bidder simply for profit.  AARP is exploiting the

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

fears of seniors with its own false campaign for seniors to "trust" AARP looking out for them and selecting the best product for seniors through its endorsement.   This is a cognizable theory of wrong under the UCL and the FAL, and Plaintiffs alleged sufficient harm to have standing under Article III and California law.   Plaintiffs respectfully request that this Court deny AARP Defendants' motion to dismiss under FRCP 12(b)(6).

## II.   FACTUAL BACKGROUND

### A.   AARP Defendants Intend To Use Their Not-For-Profit "Trust" Brand To Mislead Consumers To Join AARP And Purchase "Endorsed" Products Purely For Profit

The purpose of this Class Action is to correct wrongs and do the very thing AARP  should be doing - protecting the interests of those persons induced to become its members, including those specifically those over the age of 65.  (TAC ¶ 20.) California law gives special status and protections to those seniors who are *prospective* insureds being solicited through the sale of *endorsed* insurance products and services because they are a vulnerable class susceptible to influence and misplaced trust. (TAC ¶ 20-21, 26; See *Cal. Ins. Code §§785, 787*.)   AARP Defendants specifically know and prey on the knowledge that advertisements are more persuasive to elders, especially when they contain an endorsement, or AARP's seal of approval. (TAC ¶ 21.)  AARP uses *the meaning* of its endorsement of the insurance products to induce consumers to join AARP and gain access to AARP Defendants' endorsed insurance products and services.  (TAC ¶ 22.)   AARP Defendants know their endorsements are misleading because the Plaintiffs and  the Class justifiably and detrimental rely on their belief that the AARP endorsement  is an actual stamp of approval for the best senior insurance company when in fact it is only a stamp indicating the winner of the 'for profit' business scheme and bidding war to generate profits while exploiting seniors' fears of being without financial means.  (TAC ¶ 22-

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

24.)

The Court's Order re: Defendants' Motions to Dismiss the Second Amended Complaint (Dkt. 77) discerned "two primary theories of misrepresentation" in Plaintiffs' case:

> "The first is that AARP represented that it "endorsed" the insurance policies, even though its endorsement did not mean that those insurance policies were vetted as superior. (SAC ¶ 22.) Plaintiffs contend that, because of AARP's reputation as a non-profit "advocate of the nation's seniors," (id. ¶ 15), they thought "the endorsement [was] AARP's actual stamp of approval for the best senior insurance company when in fact it [was] only a stamp indicating the winner of the bidding war," (id. ¶ 22). At the pleading stage, the court concludes that AARP's endorsement was a material fact and that reasonable consumers could have been misled about the endorsement. [footnote omitted] See *Kwikset Corp.*, 51 Cal. 4th at 323-323."

(Dkt. 77, p. 8:9-18.)  Plaintiffs' TAC likewise pleads the requisite facts to support the conclusions and inferences that AARP's endorsement and *stamp of approval* was a material fact and that reasonable consumers could have been (and were) misled about the endorsement.  (TAC ¶20-21, 29-31.)

**B.**   **The TAC Adds The Specificity Of Facts Detailing AARP Defendants' Misleading And Fraudulent Advertising And Target Marketing That Induced Plaintiffs and Consumers With Their AARP Brand And Stamp Of Approval To Join And/Or Renew With AARP**

Following the Court's November 2, 2018 order, Plaintiffs provided the requisite pleading-level specificity surrounding the "who", "what", "when", "where" and "how" of AARP Defendants's misleading and fraudulent advertising and target marketing of Plaintiffs and consumers with their AARP brand and stamp of approval.  AARP Defendants induced Plaintiffs and other consumers to join, or renew their membership

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

in AARP, while concealing AARP's for-profit business activities and sales practices. (TAC ¶22, 29-31.)   The details of what and how AARP Defendants use their institutional unfair business practice and false advertising campaign to induce Plaintiffs and consumers to join and/or renew is set forth in the TAC.   While advertising exclusive "benefits" for joining AARP, Defendants do not disclose or obtain consent for hidden costs and burdens for joining AARP, including falling victim to AARP's business practices of employing its for-profit arm, ASI, to gather and share with insurers and other for-profit business, the "decades worth of insights and intelligence" about "the aging consumer on a deeply personal knowledge" which AARP knows and has shared with ASI.   (TAC ¶ 22.)   AARP uses ASI to "leverage the power of the AARP brand through the Provider Program, which has been engaging members with quality products and services for over a half-century."   (TAC ¶ 22.) ASI creates for-profit sales, marketing, advertising and business ventures through "audience services" that target AARP members with those who are the highest bidders and pay for AARP's "endorsement" through "branded" and "non-branded" channels. (TAC ¶ 22.)   AARP Defendants sell the AARP name and logo to falsely "lend[] instant credibility and trust" to the products and services of third parties who are willing to pay AARP Defendants for access to members' data and advertising channels.   (TAC ¶ 22.)

Plaintiffs Simon Levay, Lionel Brown and Judy Willis each joined, paid member fees, and renewed their membership with AARP, in reliance on AARP's representations made to each of them, and their justifiable and detrimental belief, that AARP would act as a non-profit organization that would place the interests of seniors first, and that AARP would fulfill this purpose by picking and only endorsing the best products and services for seniors, consistent with a mission that put protecting senior members over AARP receiving secret profits or kickbacks.   (TAC ¶ 29-31.)   Levay identifies the "when" and "how" of AARP Defendants' scheme that induced this reliance when he saw the solicitations and ads from AARP like the ones specifically

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

identified in Paragraph 27 of the TAC, in and around the time that he joined and when he renewed his membership in May, 2017, and previously. (TAC ¶ 29.) Brown and Willis also saw the solicitations and ads from AARP like the ones set forth in Paragraph 27, which induced their membership and renewal, and Willis alleges that she saw and relied on these material representations of endorsements through advertisements and solicitations over a period of 4 years of renewals. (TAC ¶ 30-31.)

In these misleading targeted ads seen by Levay, Brown and Willis, AARP represented its non-profit status and advocacy role for seniors and that it provides endorsements for products and services as a benefit of membership, which the Plaintiffs believed meant that AARP would put make its endorsements and stamps of approval based on what was best for seniors, rather than a selection based on the highest bidder to gain profits. (TAC ¶ 29-31.) In connection with AARP Defendants' material concealment, the Plaintiffs were not aware of any insurance brokering or "for profit" relationships between AARP Defendants and insurers whereby AARP received a percentage of premiums collected through AARP's marketing efforts on behalf of insurers. (TAC ¶ 29-31.) Each of the Plaintiff were also not aware at the time when they first joined and, then later renewed as an AARP member, about the private financial arrangements whereby AARP Defendants used a "for profit" entity, ASI, to broker private personal data of members and to engage with private, for profit businesses to dictate the products and services offered to AARP members as "endorsed" products based solely on "profit" rather than based on the quality of products and services and being what was best for seniors. (TAC ¶ 29-31.) Each of these Plaintiffs believed to their detriment that AARP-endorsed products and services, such as insurance products, were products and services that were the best for seniors. (TAC ¶ 29-31.)

Indeed, as demonstration of justifiable and detrimental reliance on AARP Defendants' stamp of approval Levay had seen advertisements targeted to him by AARP about its exclusive, endorsed relationship with UnitedHealth and, specifically,

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

that AARP endorsed UnitedHealth insurance products for Medicare supplement coverage and urged seniors to purchase this coverage. (TAC ¶ 29.) Levay justifiably and detrimentally relied on AARP's misrepresentations that it protected seniors and that it put their interests first ahead of "for profit" business ventures, and about its endorsements of insurance products and services, to join and renew his membership with AARP and to purchase and repeatedly renew his coverage with an AARP-endorsed UnitedHealth insurance policy. (TAC ¶ 29.)

Brown also believed that AARP endorsed products and services, such as insurance products, were products and services that were the best for seniors. (TAC ¶ 30.) Brown had seen advertisements targeted to him by AARP about its exclusive, endorsed relationship with UnitedHealth and, specifically, that AARP endorsed UnitedHealth insurance products for Medicare supplement coverage and urged seniors to purchase this coverage. (TAC ¶ 30.) Brown justifiably and detrimentally relied on AARP's misrepresentations that it protected seniors and that it put their interests first ahead of "for profit" business ventures, and about its endorsements of insurance products and services to join and renew his membership with AARP. (TAC ¶ 30.) Brown also relied on AARP's endorsements and stamp of approval regarding UnitedHealth's medigap coverage to direct his insurance broker to purchase coverage with UnitedHealth based on AARP's endorsement of UnitedHealth's insurance policy. (TAC ¶ 30.) Levay and Brown paid premiums for this UnitedHealth policy, and all of the named Plaintiffs have renewed and/or maintained their AARP membership, which allow them to maintain standing to pursue claims, as well as to seek recovery for the loss of money and/or property for AARP Defendants' unfair business practices and false advertising stated in the TAC. (TAC ¶ 29-31.)

AARP induced Plaintiffs and others to join as members and to patronize specific endorsed insurance products and services AARP's misleading stamp of approval. AARP's representations to each of the Plaintiffs and to other prospective and/or renewing members are that it is a "nonprofit, nonpartisan organization dedicated to

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

empowering people to choose how they live as they age.  AARP champions positive social change and delivers value through advocacy, information, and service." (TAC ¶23.)  However, AARP's business practices through ASI and its false designations of the best quality for seniors and its "endorsements" surrounding the marketing and sale of insurance products and services to elderly consumers in California render these representations to be false and misleading.   AARP's misrepresentations and concealment about its for-profit nature and self-dealing induced consumers to join and generated member fees and business profits, with money and/or property lost by Plaintiffs and other consumers and directed into the hands of the for-profit ASI and other parties committed to putting profits over the interests of seniors. Given the extraordinary levels of profits generated and pocketed by AARP Defendants off the backs of its members and consumers, membership in AARP should be free and/or reduced and Plaintiffs seek to disgorge member fees  from AARP, that they, and other similarly situated persons paid to AARP, based on AARP's misrepresentations and concealment about their for-profit unfair business practices, described in the TAC. (TAC ¶ 23.)

In sum, AARP Defendants are engaged in misleading, unfair and unlawful advertising and commercial activities to make billions of dollars by abusing the goodwill of the AARP name and logo - for which both the for profit and the non-profit use without distinction - at the expense of inducing payment of member fees and harming the Class. (TAC ¶ 24.)  Plaintiffs have set forth all of the necessary facts and elements to state a cause of action for violation of the UCL.  (TAC ¶ 41-56, 11-31.) Plaintiffs have also set forth all of the necessary facts and elements to state a cause of action for violation of the FAL.  (TAC ¶ 57-62.)  Accordingly, Plaintiffs respectfully request the Court to deny AARP Defendants' motion to dismiss pursuant to FRCP 12(b)(6).

\\

\\

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

## III.   **LEGAL STANDARD**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the complaint's sufficiency. See *N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). When deciding whether to grant a motion to dismiss, the court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  Claims that sound in fraud are subject to a heightened pleading standard. Fed. R. Civ. Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003) (recognizing that claims "grounded in fraud" or which "sound in fraud" must meet the Rule 9(b) pleading standard, even if fraud is not an element of the claim). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Statements of the time, place, and nature of the alleged fraudulent activities are sufficient, but mere conclusory allegations of fraud are not. *Id*.

In considering Defendants' motion, the Court must construe the alleged facts in the light most favorable to the plaintiff.  *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).  All reasonable inferences will be drawn from the allegations of the complaint in the light most favorable to the Plaintiff. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

\\

\\

\\

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

## IV.   LEGAL ARGUMENT

### A.   AARP Defendants Have Not Brought A Motion Under FRCP 12(b)(1) For Lack Of Standing, However, Their Motion Argues Against This Court's Exercise Of Jurisdiction Under Article III

The Court previously granted Plaintiffs leave to allege the joining of AARP and payment of membership fees as a measure of harm and a loss induced by AARP Defendants' false advertising and unfair business practices, which Plaintiffs have done.  (TAC ¶29-31, 23, 27, 49, 59.)  Plaintiffs state that AARP's specific target marketing and advertising to seniors about their non-profit functions and stamps of approval induced actual detrimental and justifiable reliance, and two of the Plaintiffs state specific facts demonstrating that AARP's misleading stamps of approval directly caused them to purchase AARP-endorsed insurance policies, while AARP Defendants concealed their for-profit dealings, motives and intent.  (TAC ¶29-31, 20-27, 46-49, 59-60.)

AARP Defendants do not move to dismiss the TAC for lack of standing under Federal Rule of Civil Procedure 12(b)(1) or Article III.  However, their motion invokes Article III and claims a lack of standing to argue that the TAC is deficient and should be dismissed.  (AARP MTD [Dkt. 84], p. 20.)

As we previously noted in prior oppositions, standing concerns a federal court's subject matter jurisdiction under Article III, and a motion to dismiss under Rule 12(b)(1) is the proper challenge, not a rule 12(b)(6) motion. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  AARP Defendants have not moved for relief under Rule 12(b)(1), however, to the extent that the Court is not satisfied that there is subject matter jurisdiction over this action based on Article III, the action should be remanded to state court.  Since this action was removed from state court to federal court by Defendants, a determination by this Court that Plaintiffs lack standing for purposes of subject matter jurisdiction under Article III would require this matter to be remanded back to state court. See *28 U.S.C. § 1447(c)* ("If at any time before final judgment it

appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); see also *Page v. Tri-City Healthcare Dist.*, 860 F. Supp. 2d 1154, 1171 (S.D. Cal. 2012) ("Where a plaintiff in a removed action lacks federal standing to sue, the action should generally be remanded, not dismissed.").

To maintain jurisdiction, the Court must conclude that Plaintiffs have Article III standing. Based on the facts stated in the TAC, Plaintiffs have identified cognizable harms and losses from being induced and paying to join and/or renew membership with AARP and, in the instances of Plaintiffs Levay and Brown, specifically relying on AARP Defendants stamp of approval to buy AARP-endorsed insurance products. These are cognizable harms directly tied to AARP's misleading for-profit trust branding and false advertising campaign regarding its stamp of approval, which the Court previously noted could mislead a reasonable consumer into putting his or her trust in AARP and the AARP endorsed products and services. Plaintiffs state specific facts of their reliance and inducement causing harm, and the TAC is sufficient at the pleading stage to state a claim.

## B.   Plaintiffs' TAC States A Claim For Violations Of The UCL And The FAL

The UCL "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'" *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011). This can "include anything that can properly be called a business practice and that at the same time is forbidden by law." *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1266 (1992) (internal quotations omitted). "In addition, a practice that is unfair or fraudulent may be the basis for a UCL action even if the conduct is 'not specifically proscribed by some other law.'" *Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1125 (2014) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

"The state's false advertising law (§ 17500 et seq.) is equally comprehensive within the narrower field of false and misleading advertising." *Kwikset, supra*, 51

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

Cal.4th at 320.  "'[A]ny violation of the false advertising law ... necessarily violates the UCL.'"  *Kasky v. Nike, Inc.,* 27 Cal.4th 939, 950 (2002). Section 17500 "proscribe[s] '"not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." ' [Citation.]"  *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 679.

The elements of intentional misrepresentation in California are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (1997).  The elements of negligent misrepresentation are similar except that a plaintiff need not show that the defendant knew of the falsity of the statement, but rather that the defendant lacked reasonable ground for believing the statement to be true.  *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006).

Here, Plaintiffs' TAC states, and the Court previously noted, that AARP Defendants' stamp of approval and endorsements could mislead consumers because they are meant by Defendants to induce consumers to trust AARP and the insurance products and services it endorses as being best for senior consumers, rather than being based on for profit considerations. (See TAC ¶11-31.)  Plaintiffs were induced to join AARP and were taken in by AARP Defendants' stamp of approval and endorsements because AARP Defendants advertised and marketed its brand and endorsements of insurance products and services as a trust brand that senior consumers and prospective insureds like Levay, Brown and Willis would believe represented not for profit considerations of what was best for senior consumers--Plaintiffs trusted these representations and advertisements to signify selecting and putting forth what is best for seniors *irrespective of profit* when, in fact, AARP Defendants knew that their advertisements and marketing were intended to deliver profits first and were more expensive.

Much of AARP Defendants' brief attempts to discount or minimize *the power*

*Plaintiffs' Opposition to AARP Defendants' Motion to Dismiss  Plaintiffs' Third Amended Complaint - Page 11*

wielded by AARP Defendants' through their brand and logo to play on the trust that seniors like Levay, Brown and Willis placed on AARP. For instance, the cases cited by AARP Defendants at pages 11 and 12 of their brief that are used to support their vague argument for non-actionable "general statements that a product is best, superior, carefully selected, trustworthy, or low cost", all involve commercial, for-profit businesses that do not hold the role or measure of trust that AARP Defendants hold to seniors. Their cited cases involve entities like CarMax and Gillette which are clearly not the same as the watchdog role of AARP Defendants representing themselves to advocate for, and protect, seniors' interests. (Compare Defendants MTD with AARP Defendants' inducement of *fiduciary, trust* relationship with Plaintiffs and the proposed class at TAC ¶12-13, 18-19, 22-40.)

Plaintiffs assert that AARP Defendants stand in a more fiduciary-like relationship to Plaintiffs that the cereal maker, General Foods, in *Committee on Children's Television, Inc. v. General Foods Corp*., 35 Cal.3d 197 (1983), and that this instant case represents the circumstances where these defendants are not acting merely as commercial business. Instead, a fiduciary standard applies to AARP Defendants because they "have knowingly undertake[n] to act on behalf and for the benefit of another," and assumed a fiduciary undertaking because of their unique non-profit role and function in the marketplace of senior consumers thereby "entering into a relationship which imposes that undertaking as a matter of law." *Children's Television, Inc. v. General Foods Corp*., *supra* at 221. An entity that takes on this fiduciary role to a vulnerable group that puts its trust in the entity, "must use the utmost good faith and, if he profits from the transaction, the law presumes the agreement was entered into by the beneficiary 'without sufficient consideration and under undue influence.' [citations omitted]. *Id*. at 222; *Oakland Raiders v. National Football League,* 131 Cal. App. 4th 621, 636 (2005) [fiduciary duty may exist for a non-profit.]. When it comes to seniors and their trust placed in AARP and its stamp of approval, it is appropriate to hold AARP to a fiduciary standard under California

*Plaintiffs' Opposition to AARP Defendants' Motion to Dismiss  Plaintiffs' Third Amended Complaint - Page 12*

law regarding its representations directing Plaintiffs and other seniors to depend and rely on AARP's endorsements and selection of insurance products and services. AARP Defendants' concealment of its profit motives and its unlawful insurance sales, brokering and premium kickbacks that are currently in dispute and pending in the *Friedman* litigation (TAC ¶21), demonstrate a violation of trust on the part of AARP Defendants towards Plaintiffs and other consumers who were induced to pay member fees to join and/or renew as members. Furthermore, the harms directly caused by AARP Defendants' trust branding and stamp of approval concerning specific insurance products, were suffered by Levay and Brown who both purchased insurance products in specific reliance on AARP Defendants' misrepresentations and concealment of material facts. Plaintiffs were unaware that AARP Defendants' stamp of approval was driven by their own profits, as opposed to the justifiable belief and reliance of Plaintiffs that AARP Defendants were putting the interests of seniors first.

Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Here, Plaintiffs specifically set forth facts that would establish AARP Defendants' specific knowledge and intent to prey upon seniors' trust and vulnerability for their insurance profit scheme. (TAC ¶22-23.) Rule 9(b) only "requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). As such, "in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant." Id. In those cases, a "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore,* 885 F.2d at 540.

Plaintiffs have sufficiently alleged facts to support their theories of misrepresentation and concealment. Plaintiffs' claims for fraudulent concealment and intentional misrepresentation set forth that AARP Defendants knew of the material

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

facts surrounding their for profit business practices and misleading stamp of approval related to the marketing and sale of insurance products, and that they misrepresented or concealed the facts regarding their profit motives to induce reliance by the plaintiffs. See *Doe v. Superior Court*, 237 Cal. App. 4th 239, 244 (2015) (listing elements for fraudulent concealment); *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 230–31 (Cal. Ct. App. 2013) (listing elements for intentional misrepresentation).

Plaintiffs have alleged specific facts that allow the Court to draw the reasonable inference that AARP Defendants knew they were being deliberately misleading and were concealing from consumers that their AARP stamp of approval was not based on ensuring the best quality and products for seniors. The mere AARP logo itself is deceptive as it is used by the for profit and the non profit without distinction. In fact, the public at large (including Plaintiffs) is not aware there is a for profit AARP.

This is actionable fraud under the UCL--AARP Defendants intended their misrepresentations and concealment to cause consumers [prospective and renewing AARP members and prospective insureds of AARP-endorsed products insurance products] to believe that AARP's stamp of approval was provided for what were best for seniors consumers, rather than what was best *for AARP Defendants' profits*. See *Iqbal*, 556 U.S. at 678; *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146-1147 (9th Cir. 2012) (dismissing suit when plaintiff made "merely conclusory" allegations regarding the defendant's knowledge).

AARP Defendants' motion cites to case law, notably the *Hanberry* decision, where the trust built into a brand *has been found* under California law to support a misrepresentation claim. *Hanberry v. Hearst Corp.*, 276 Cal.App.2d 680 (1969). In *Hanberry*, an injured plaintiff sued Hearst for advertising a brand of shoes as meeting the Good Housekeeping seal of approval. The court held that although Hearst was not the seller or manufacturer of the shoes, "it held itself out as a disinterested third party which had examined the shoes, found them satisfactory, and gave its endorsement. By the very procedure and method it used, respondent represented to the public it

*Plaintiffs' Opposition to AARP Defendants' Motion to Dismiss  Plaintiffs' Third Amended Complaint - Page 14*

possessed superior knowledge and special information concerning the product it endorsed. Under such circumstance, respondent may be liable for negligent representations of either fact or opinion. [Citations.]" *Id.* at 686-687.

The court in *Hansberry* allowed an action against the publisher responsible for the Good Housekeeping Seal to proceed over a third party's defective product given the "seal of approval", and explained:

> Having voluntarily involved itself into the marketing process, having in effect loaned its reputation to promote and induce the sale of a given product, the question arises whether respondent can escape liability for injury which results when the product is defective and not as represented by its endorsement. In voluntarily assuming this business relationship, we think respondent Hearst has placed itself in the position where public policy imposes upon it the duty to use ordinary care in the issuance of its seal and certification of quality so that members of the consuming public who rely on its endorsement are not unreasonably exposed to the risk of harm.

*Id.* at 684.

The Court went on to explain that the extent over which whether the defective product (shoes) were "good" involved questions of fact and could not be determined at the pleading stage. *Id*. at 687. AARP Defendants make numerous arguments in their motion at page 16 which are factual in nature that the insurance products and "agreements" between AARP and its insurance partners purport to care about "best efforts" to take into account "the social welfare needs of AARP members" however these are clearly disputed facts. These statements also fly in the fact of Plaintiffs' TAC at paragraphs 22-24 which specifically plead facts that establish that AARP Defendants are looking to make profits and sell products and services like insurance by using the AARP stamp of approval brand to "lend[] instant credibility and trust" to insurance products and services and selling the AARP logo for the profit of Defendant ASI, the for profit arm of AARP Defendants.

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

Coupled with AARP Defendants' advertisements and public statements about protecting seniors and their interests, and taking all of the reasonable inferences from the specific facts alleged in the TAC, Plaintiffs have been deceived by a grossly conflicted 'for profit' business enterprise falsely masquerading as a not for profit protector of seniors.   They have been induced to join, pay member dues, and vulnerably rely on AARP's stamp of approval.  It is a factual question regarding AARP's arguments over whether its approved insurance products are "great" for seniors and in furtherance of seniors' "social welfare" as claimed at page 16 of their motion, or rather, its insurance products are pushed and promoted to generate AARP's bottom line profits at a cost to seniors.  As set forth in Plaintiffs TAC, AARP Defendants picking products and services that are best for AARP Defendants' profits, instead of what are best for seniors.

We believe that the AARP Defendants have a higher duty to Plaintiffs and other seniors than the Hearst Corporation did to consumers reading magazines.  AARP Defendants' purported reason and purpose for existing as embodied in the AARP brand *is to protect seniors and advocate for seniors' best interests* through the selection and endorsement of products and services *for seniors*, which is what they use to induce membership.  Having assumed a relationship of trust to Plaintiffs and other consumers, AARP Defendants should answer the complaint and provide discovery to permit the parties to determine the factual degree and extent of AARP Defendants' misleading statements and concealment of facts and the impact of AARP's for profit manipulation of its stamp of approval to cause Plaintiffs and other consumers to pay into AARP through membership fees and payment for services and products *inflated* because of the AARP endorsement. Plaintiffs allege both monetary harms and losses (inducing joining/renewing membership fees, premium payments) and non-monetary harms (acquisition of their economically valuable personal data though the membership process to be manipulated and exploited by AARP Defendants through the for-profit ASI Defendant) which result from the illusion of non-profit beneficence

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

that AARP Defendants admit they exploit for profit-making purposes.

In *Hinojos v. Kohl's Corporation*, 718 F.3d 1098 (9th Cir. 2013), the Ninth Circuit concluded that, under *Kwikset*, plaintiffs had standing to pursue claims under the UCL, the FAL and the CLRA alleging that a company had used fictitious former price information on its labels to mislead consumers into believing they were receiving a substantial discount. The plaintiff also alleged he " 'would not have purchased [the] products ... in the absence of [defendant's] misrepresentations.' " *Id.* at 1102. The district court dismissed the complaint, "determining that [the plaintiff] did not have standing under the UCL or the FAL ... because [he] had acquired the merchandise he wanted at the price advertised."*Id.*

The Ninth Circuit reversed and noted that *Kwikset* had identified "precisely what a plaintiff must allege when he wishes to satisfy the economic injury requirement in a case involving false advertising: '[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging ... that he or she would not have bought the product but for the misrepresentation.' [Citation.]" *Hinojos, supra*, 718 F.3d at 1104 [citing and quoting *Kwikset, supra*, 51 Cal.4th at 330. The Ninth Circuit concluded the plaintiff had satisfied those requirements by alleging that "the advertised discounts conveyed false information about the goods he purchased, i.e., that the goods he purchased sold at a substantially higher price [from the defendant] in the recent past and/or in the prevailing market. He also alleges that he would not have purchased the goods in question absent this misrepresentation. This is sufficient under Kwikset." *Id.*

Like the plaintiff in *Hinojos*, Plaintiffs set forth that AARP's misrepresentations and advertisements about putting seniors first and the AARP stamp of approval and endorsement of products and services drove their decision to enter into membership and to go with products and services given the AARP stamp of approval, which they would not have otherwise paid, had they known the true facts surrounding AARP's for profit motives and intentions. (TAC ¶28, 29-31.) "[W]hether a business practice

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 · FAX (323) 658-8477

is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Where, as here, the reasonable consumer test applies to a plaintiff's underlying claims, it is a "rare situation in which granting a motion to dismiss is appropriate." *Id.* at 939. The advertisements of AARP Defendants in paragraph 27 representing their protection of seniors and stamp of approval on certain select insurance services and products, are sufficiently specific and tied to Plaintiffs' claims of reliance (TAC ¶29-31) to state a claim.

Plaintiffs' allegations in Paragraphs 29-31 are sufficient to allege their specific reliance on AARP Defendants' particular misrepresentations and advertisements because Plaintiffs' TAC describes, in great detail, AARP Defendants' targeted overall advertising campaign directed at consumers to solicit and induce their membership and to target their purchase of particular products and services approved by Defendants to further their profit motives. The sufficiency of UCL allegations involving *advertising campaigns* was addressed by the California Supreme Court in *Comm. On Children's Television, Inc. v. Gen. Foods Corp.* (35 Cal. 3d 197 (1983)). There, the court explained, in finding the complaint sufficient to plead specificity, that "[t]he place and time of the television advertisements, however, is fully known to defendant General Foods, but became available to plaintiffs only through discovery. That defendant equally knows the distribution of cereal box advertisements. A lengthy list of the dates and times of cereal ads on California television stations would add nothing of value to the complaint; the same is true for a list of California grocers marketing General Foods cereals." The court in *Comm. On Children's Television* found that the language of the complaint setting forth ads for sugared cereals within a given four-year period, like what Plaintiffs allege in Paragraph 27 of the TAC, was sufficient to define the subject of the complaint and provide notice to defendants. *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 218-219 (1983). Since General Foods knew the content of each questioned advertisement, attachment of dozens or

hundreds of advertisements and storyboards obtained through discovery would consume innumerable pages of the complaint. *Id*. at 219. Such levels of specificity and redundancy, moreover, "would not redress defendants' grievance, which is, as we understand it, not that they lacked knowledge of the content of the commercials but that they do not understand what it is in the images and words that gives rise to the alleged misrepresentations." *Id*.  The feigned concern of AARP Defendants to not know their own direct campaign of false advertisement and endorsement to generate memberships and insurance sales from consumers who believe they are getting the stamp of approval for the best products and services for seniors, is similar to the concerns of General Mills that the California Supreme Court rejected.

"For plaintiffs to provide an explanation for every advertisement would be obviously impractical. We believe, however, that the trial court could reasonably require plaintiffs to set out or attach a representative selection of advertisements, to state the misrepresentations made by those advertisements, and to indicate the language or images upon which any implied misrepresentations are based." *Id.* at 219. Here, Plaintiffs allege in the TAC that AARP Defendants have run a pervasive advertising and marketing campaign designed specifically to induce and trick senior consumers like Plaintiffs into believing that AARP Defendants and their brand represent the best choices for seniors, as opposed to the best vehicle for profits for AARP Defendants. (TAC ¶11-31.)  Thus, Plaintiffs have met sufficient pleading standards to establish their claims, and the existence of reasonable consumer reliance on AARP Defendants' misleading stamp of approval and advertisements to induce payment for memberships/renewals and AARP-endorsed insurance products and services.

\\
\\
\\
\\

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD · SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477

## V.   **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request the Court to deny AARP Defendants' motion to dismiss under 12(b)(6). Plaintiffs have alleged sufficient facts and elements to state a claim, and the nature of AARP Defendants' arguments is factual in nature and dependent on discovery and determination of disputes of fact that cannot be determined at the pleading stage. If the Court concludes that it lacks subject matter jurisdiction, then this matter should be returned and remanded to state court. If the Court concludes it does have subject matter jurisdiction, then the motion to dismiss should be denied.

DATED:      January 14, 2019                THE HOMAMPOUR LAW FIRM

By:      _/s/ Danielle Lincors_
Arash Homampour,
Danielle Lincors,
Attorneys for Plaintiffs and Putative Class

SCHIMMEL & PARKS

By:      _/s/ Michael Parks_
Alan Schimmel,
Michael Parks,
Attorneys for Plaintiffs and Putative Class

THE HOMAMPOUR LAW FIRM
A PROFESSIONAL LAW CORPORATION
15303 VENTURA BOULEVARD - SUITE 1450
SHERMAN OAKS, CALIFORNIA 91403
PHONE (323) 658-8077 • FAX (323) 658-8477