O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON LEVAY, JUDITH WILLIS, and LIONEL BROWN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AARP, INC., AARP SERVICES, INC., and DOES 1 through 60,<br><br>Defendants. | Case No. 17-09041 DDP (PLAx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>[Dkt. 84] |

Presently before the court is Defendants' Motion to Dismiss the Third Amended Complaint. Having considered the parties' submissions and heard oral argument, the court adopts the following Order.

**I.    BACKGROUND**

Plaintiffs Simon Levay, Judith Willis, and Lionel Brown (collectively, "Plaintiffs") bring this putative class action challenging Defendants' marketing and endorsement of

insurance policies. (*See* Third Amended Complaint ("TAC"), Dkt. 80, ¶ 11.) Defendants are AARP, Inc. ("AARP") and AARP Services, Inc. ("ASI"), a wholly owned for-profit subsidiary of AARP (collectively, "Defendants"). (*Id.* ¶¶ 3, 4.)

Plaintiffs are AARP members who allege to have "joined and paid to be AARP members" after being "induced . . . through unlawful, misleading and/or unfair representations of products, services and endorsements by AARP and/or concealment of AARP's unlawful 'for profit' business activities." (*Id.* ¶ 11.) Specifically, Plaintiffs allege that they relied on "AARP's misrepresentations that it protected seniors and that it put their interests first ahead of 'for profit' business ventures, and about its endorsements of insurance products." (*Id.* ¶¶ 29, 30, 31.) Plaintiffs believed that "AARP would act as a non-profit organization that would place the interests of seniors first, and that AARP would fulfill this purpose by picking and only endorsing the best products and services for seniors, consistent with a mission that put protecting senior members over AARP receiving secret profits or kickbacks." (*Id.* ¶¶ 29, 30, 31)

Plaintiffs claim that AARP's endorsement of insurance policies is misleading because it "induce[d] Plaintiffs and others to join AARP under the misrepresentation and guise of advocating for the interests of seniors in terms of AARP's services when, in fact, AARP's primary purposes and functions have become . . . to generate gross and excessive profits for Defendant ASI and its for-profit business partners." (*Id*. ¶ 49.) Plaintiffs allege that AARP "targeted them with for-profit endorsements," (*id.* ¶ 24), and that AARP's stamp of approval is only a "stamp indicating the winner of [a] bidding war." (*Id.* ¶ 20.) Plaintiffs allege that they "placed their trust in" the AARP name, while AARP "sold their name to the highest-bidding insurance companies . . . ." (*Id*. ¶ 24.)

Plaintiffs "suffered a loss of money and/or property caused by their justifiable and detrimental reliance on AARP's misrepresentations," specifically, Plaintiffs claim to have lost their "payment of member fees to join and/or renew their memberships with AARP." (*Id.* ¶ 28.) Plaintiffs bring suit against Defendants alleging (1) violations of California's

2

Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and (2) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

The court previously dismissed the First and Second Amended Complaints and allowed leave to amend.[1] (Dkts. 58, 77.) In the Second Amended Complaint, the court identified Plaintiffs' theory of false and misleading advertisements as the following: "AARP represented that it 'endorsed' the insurance policies, even though its endorsement did not mean that those insurance policies were vetted as superior." (Order II, at 8.) The court reviewed the complaint for UCL statutory standing and concluded that "AARP's endorsement was a material fact and that reasonable consumers could have been misled about the endorsement." (*Id.*) In dismissing the Second Amended Complaint, the court granted leave to amend only to (1) allege a viable theory of injury that corresponded with the measure of damages sought, namely, the cost of the AARP membership fees, and (2) to sufficiently plead fraud pursuant to Rule 9(b). (See Order II.) Defendants now move to dismiss the TAC under Rule 12(b)(6) and Rule 9(b).

## II. LEGAL STANDARD

### a. Motion to Dismiss Under Rule 12(b)(6)

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include

---

[1] Order Re: Defendants' Motions to Dismiss ("Order I"), July 12, 2018, Dkt. 58, and Order Re: Defendants' Motions to Dismiss Second Amended Complaint ("Order II"), Nov. 2, 2018, Dkt. 77.

3

"detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id.* at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id*. at 678 (citations and internal quotation marks omitted).

### b. Rule 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A complaint need not mention the word "fraud" to be subject to Rule 9(b)'s heightened pleading requirement, but it must contain allegations "that necessarily constitute fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). When a plaintiff alleges a "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," a claim sounds in fraud and is subject to Rule 9(b). *Id.* at 1105.

"Rule 9(b) demands that the circumstances constituting the alleged fraud 'be "specific enough to give defendants notice of the particular misconduct . . . so they can defend against the charge and not just deny that they have done anything wrong."'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citations omitted). Claims sounding in fraud must be "accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Vess*, 317 F.3d at 1106.)

///
///
///
///
///

4

## III. DISCUSSION

### a. Motion to Dismiss Under Rule 12(b)(6)

Plaintiffs allege that Defendants' advertising was false, misleading, and deceptive in violation of the FAL and the UCL.[2] (TAC ¶¶ 44, 59.) Defendants argue that (1) Plaintiffs have failed to identify any misrepresentation by AARP about membership benefits, (2) assuming that AARP's endorsement can be viewed as an implied promise of superiority, Plaintiffs have failed to identify any actionable misrepresentation, and (3) Plaintiffs have failed to identify how any alleged representation was false. (Motion to Dismiss ("MTD") at 10-17.)

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The false advertising law prohibits any 'unfair, deceptive, untrue, or misleading advertising.'" *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing Cal. Bus. & Prof. Code § 17500). The FAL prohibits advertising that is false and advertising that "although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), as modified (May 22, 2002) (citation omitted). "[A]ny violation of the false advertising law . . . necessarily violates the [UCL]." *Id.* at 950.

To state a cause of action under the FAL and UCL, Plaintiffs must plausibly allege that "reasonable consumers" are likely to be deceived by the advertising. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). "This requires more than a mere possibility that [the representation] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* (quoting *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). The "reasonable consumer standard requires a probability

---

[2] Plaintiffs also allege violation of California's Insurance Code § 785. (TAC ¶ 44.) The court dismissed the § 785 claim with prejudice in its previous orders. See Order I, Dkt. 58, 7-8 and Order II, Dkt. 77, 6-7. The court finds no reason to revive this claim.

5

that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (internal quotation and citation omitted).

### 1. The Alleged Representations

Defendants argue that the TAC does not allege any "statements by AARP, only advertisements run by United Healthcare and New York Life . . . ." (MTD at 11.) The court disagrees. The court discerns two alleged AARP representations.[3] The representations are, (1) solicitations and ads from AARP in which it represents its status and role as an advocate for seniors, and (2) the AARP endorsements on United and New York Life insurance advertisements. Specifically, Plaintiffs allege that (1) they "saw solicitations and ads from AARP . . . in which AARP represented its non-profit status and advocacy role for seniors and that it provide[d] endorsements for products and services as a benefit of membership," and (2) they "saw the [endorsements] from AARP which appear like the ones set forth in Paragraph 27." (TAC ¶¶ 29, 30, 31.)

As to the first alleged AARP representation, the Complaint provides the general description: "solicitations and ads from AARP . . . in which AARP represented its non-profit status and advocacy role . . . ." (*Id.* ¶¶ 29, 30, 31.) Whether this alleged representation is pled with particularity will be discussed in section (b) of this order. As to the second misrepresentation, paragraph 27 provides samples of AARP's endorsements on United Healthcare's and New York Life's webpages, television commercials, and in publications. (*Id.* ¶ 27.) One such sample of the AARP endorsement provides: "AARP endorses the AARP Medicare Supplement Insurance Plans . . . UnitedHealthcare Insurance Company pays royalty fees to AARP for the use of its intellectual property. These fees are used for the general purposes of AARP. AARP and

---

[3] The thirty-page complaint contains numerous allegations, many of which lack clarity and specificity.

6

its affiliates are not insurers." (*Id.* ¶ 27(a).) Another sample provides: "AARP Life Insurance Program from New York Life . . . Exclusively for AARP members ages 50-74." (*Id.* ¶ 27(b).) Although the endorsements are found on advertisements run by United Healthcare and New York Life, AARP does not dispute that it permits its name to appear on the advertisements and that AARP in fact endorses these products. Therefore, the endorsements constitute AARP's representations even though they appear on United and New York Life advertisements. The allegations are that both representations discussed above—AARP's representation about its advocacy status and AARP's endorsements, taken together, misled Plaintiffs into believing that the "endorsements [were] AARP's actual stamp of approval . . . when in fact it is only a stamp indicating the winner of the bidding war." (*Id.* ¶ 20.)

The court finds that Plaintiffs have identified representations made by AARP. Whether these representations are actionable and are pled with particularity as required under Rule 9(b) are issues discussed below.

   *2. Actionable Misrepresentations*

Plaintiffs allege that they "believed that AARP endorsed products and services, such as insurance products, were products and services that were the *best for seniors*." (TAC ¶¶ 29, 30, 31 (emphasis added).) Plaintiffs also allege that "when persons join AARP for the representations of AARP endorsements and discounts, including the advertised insurance services and products, they are actually looking at insurance services and products offered, not be[cause] the insurance company [was] objectively determined to be the 'best' insurer for seniors based on objective measures or standards, but rather by the insurance company that paid the most money, profits and percentages of premiums back to AARP." (TAC ¶ 18.) Defendants argue that even if the endorsements were implied representations of superiority, specifically, that the endorsements represented that the products were "the best for seniors," this is a generalized representation that is insufficient to state a claim for relief. (MTD at 11-13.)

7

As a preliminary matter, the court notes that in the prior motions to dismiss, neither party argued or briefed whether the endorsements' implied promise of superiority was actionable. Defendants raise this objection for the first time in the present motion; therefore, the court finds it appropriate to revisit its prior finding that Plaintiffs had sufficiently pled the theory that a reasonable consumer could have been misled about the endorsement. (See Order II, at 8.) The Third Amended Complaint alleges more specifically what Plaintiffs believed the implied promises in the endorsements were. First, Plaintiffs believed that the endorsement represented what was "best for seniors," based on objective standards, and second, Plaintiffs believed that the products were selected "irrespective of profits." (TAC ¶¶ 29, 30, 31.) The court reviews each of these alleged misrepresentations below.

        a. <u>Best for Seniors</u>

General statements of product superiority are not actionable absent some "misdescriptions of specific or absolute characteristics." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (quoting *Stiffel Co. v. Westood Lighting Group*, 658 F. Supp. 1103, 1115 (D.N.J. 1987)). "Puffing is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (citations omitted). "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance[,] . . . the difference between a statement of fact and mere puffery rests on the specificity or generality of the claim." *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). "While product superiority claims that are vague or highly subjective often amount to nonactionable puffery, 'misdescriptions of specific or absolute characteristics of a product are actionable.'" *Southland Sod Farms*, 108 F.3d at 1145 (quoting *Cook, Prekiss & Liehe*, 911 F.2d at 246)).

Plaintiffs' primary allegation is essentially that the AARP endorsement represented a promise that the endorsed products were the "best for seniors." (*See* TAC

8

¶¶ 18, 20, 21, 29, 30, 31, 46, 49.) Plaintiffs have not, however, identified what qualities of an insurance product they believed would qualify that product as the "best," nor have they alleged how the products were not in fact the "best." "Best" is a problematic word because it is vague, highly subjective, and lacks the specific or absolute characteristics required to state an actionable misrepresentation. An individual's insurance needs vary with age, health, and many other factors. An insurance product that is the "best for seniors" could be the cheapest, the most coverage, the best customer service rating, the most plans, the most financial stability behind the company, or have the best response time. Indeed, AARP's endorsements appear to recognize the impossibility of recommending a "best" policy for every individual. (See TAC ¶ 27(b) ("AARP encourages you to consider your needs when selecting products and does not make specific product recommendations for individuals.").)

Plaintiffs urge this court to accept their theory that "the best for seniors," is an actionable misrepresentation by contending that AARP's representation is similar to the representation in *Hanberry v. Hearst Corp.*, 276 Cal. App. 2d 680 (1969). In *Hanberry*, the California Court of Appeal held that the Hearst Corporation could be liable for negligent representation to a consumer who purchased shoes with the Hearst Good Housekeeping seal of approval and who was subsequently injured while wearing the defective shoes. *Hanberry*, 276 Cal. App. 2d at 684. The court held that "[i]mplicit in the seal and certification is the representation [that] respondent has taken reasonable steps to make an independent examination of the product endorsed, with some degree of expertise, and found it satisfactory." *Id.* Notably, the Good Housekeeping magazine included the following statements: "'This is Good Housekeeping's Consumers' Guaranty' and 'We satisfy ourselves that products advertised in Good Housekeeping are good ones and that the advertising claims made for them in our magazine are truthful.'" *Id.* at 682. "The seal itself contained the promise, 'If the product or performance is defective, Good Housekeeping guarantees replacement or refund to consumer.'" *Id.* When plaintiff there

9

was injured by the alleged defective shoe, the court permitted suit against the Hearst Corporation based on the representations on the Good Housekeeping seal of approval. *Id.* at 688.

The alleged representation here is distinguishable from the representation in *Hanberry*. In *Hanberry*, the magazine and the seal at issue contained express promises of guaranty. The express promises of guaranty and satisfaction made a consumer's reliance on Good Housekeeping's independent examination reasonable. Here, there are no express representations about the meaning of the AARP endorsements. And in the context of this case, where Plaintiffs have not alleged what they plausibly believed "best" meant, the implied promise of superiority is nonactionable puffery. And, as discussed below, even if a promise of superiority is actionable in this context, Plaintiffs have not identified any deficiencies, or in the language of *Hanberry*, any "defect" with the insurance products at issue.

Plaintiffs also argue that "AARP Defendants stand in a more fiduciary-like relationship to Plaintiffs" than the commercial, for-profit businesses did in cases involving nonactionable misrepresentations. (Opp. at 12.) Plaintiffs assert that "[h]aving assumed a relationship of trust to Plaintiffs and other consumers, AARP Defendants should answer the complaint and provide discovery to permit the parties to determine the factual degree and extent of AARP Defendants' misleading statements and concealment of facts and the impact of AARP's for[-]profit manipulation of its stamp of approval." (*Id.* at 16.) Plaintiffs, however, do not cite to any authority supporting the theory that AARP should be held to a "higher duty" than a for-profit corporation because it is a non-profit. Furthermore, Plaintiffs have not pled a breach of fiduciary duty theory in the Third Amended Complaint. To plead fiduciary duty, Plaintiffs must put forth facts to show that AARP owes Plaintiffs a fiduciary duty imposed by law or undertaken by agreement. *See Oakland Raiders v. Nat'l Football League*, 131 Cal. App. 4th 621, 631-32

10

(2005). Therefore, Plaintiffs have not sufficiently pled facts to establish that AARP owed Plaintiffs a fiduciary duty.

The court concludes that the word "best" in the context of this case is vague. The court further notes that the Third Amended Complaint does not define what is meant by this term or what characteristics would make the insurance products "best for seniors." The alleged implied representation that endorsed products are "the best" is not an actionable representation. Construing the facts in the light most favorable to Plaintiffs, the court finds that the allegations do not state a claim for relief.

### b. Selected Irrespective of Profits

Plaintiffs also allege that they saw "solicitations and ads from AARP . . . in which AARP represented its non-profit status and advocacy role for seniors and that it provide[d] endorsements for products and services as a benefit of membership, which [Plaintiffs] believed meant that AARP would [ ] make endorsements and stamps of approval based on what was best for seniors, rather than *based on profits*." (TAC ¶¶ 29, 30, 31 (emphasis added).) Plaintiffs allege that Defendants made these false representations "while concealing AARP's for-profit business activities and sales practices." (*Id.* ¶ 22.) In other words, Plaintiffs were duped into paying membership dues believing they were accessing products selected irrespective of profits, not based on a "bidding war." (*Id.* ¶¶ 20, 24, 49, 60.)

A representation that a product is selected irrespective of profits could be an actionable misrepresentation because it is sufficiently specific and objectively determinable such that a consumer could reasonably rely on such representation. *See Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246 (quoting *Stiffel Co.*, 658 F. Supp. at 1115) ("misdescriptions of specific or absolute characteristics of a product are actionable."). Evidence could be developed one way or another to determine whether the selection process considered profits. Therefore, a representation that profits played no role in the selection of a product could be actionable. However, the complaint is devoid of any such

11

representation. Rather, it appears that Plaintiffs believed products were endorsed "irrespective of profits" because, Plaintiffs allege, AARP "conceal[ed] AARP's for-profit business activities and sales practices." (TAC ¶¶ 11, 22, 23, 28.) However, this allegation is belied by the complaint itself. Sample advertisements in paragraph 27 provide: United Healthcare and New York Life Insurance Companies "pay[] royalty fees to AARP for the use of its intellectual property." (TAC ¶ 27.) Therefore, it would not be reasonable for a consumer to believe that AARP was not engaged in revenue generating activities. Because there is no allegation in the complaint that AARP made a representation that revenue concerns played *no* role in its endorsement decisions, the complaint is defective. The court also concludes that Plaintiffs' theory of there being an actionable wrong because AARP made decisions which may have been influenced, in part, by receiving "profits" to be impermissibly vague as pled. Assuming that AARP received some financial gain from licensing its endorsement, the court fails to see, absent "something more" that such arrangement constitutes an actionable wrong. It would be foolish indeed for an enterprise, regardless of its status as a non or for-profit entity, to be blind, all other factors being substantially equal, to revenue generating opportunities. In short, there is nothing nefarious about AARP making endorsement decisions, or any other business decisions, based on generating maximum revenue that will be used to support its activities, absent some allegation that such decision resulted in articulable harm to its members. Alleging, in effect, that plaintiffs *must have been* injured because AARP received revenue is not sufficient.

To the extent that Plaintiffs also allege that AARP misrepresented its non-profit status and advocacy role, (*see, e.g.*, TAC ¶¶ 11, 14, 23, 24), Plaintiffs fail to connect this alleged fraudulent conduct with any injury they may have suffered. The only viable injury Plaintiffs allege is their payment of membership fees. Plaintiffs do not appear to allege that they joined AARP based on its non-profit status, but rather, because they believed AARP's *endorsements* represented "the best [products] for seniors." (*Id.* ¶¶ 29,

12

30, 31.) In any event, as noted above receiving revenue is not necessarily inconsistent with being an advocate for seniors and endorsing products for seniors.

The court concludes that the alleged representation that AARP's endorsements were selected irrespective of profits does not adequately state a claim for relief.

### 3. Allegations of Falsity or Deception

Assuming, arguendo, that the alleged representation that an insurance product is "the best" is actionable, Plaintiffs have not alleged how the endorsed products were materially deficient or otherwise not "the best." The only allegation that can be read as indicating the endorsed products were deficient states: "[Plaintiff] Levay was offered the same or similar insurance policy from New York Life (outside of AARP) at half the price." (TAC ¶ 8.) However, Plaintiffs did not allege how the two products may have compared. The court should not be required to speculate what "same or similar" means. Further, Plaintiff Willis does not allege to have purchased or otherwise inquired into any of the endorsed products, and Plaintiff Brown, who purchased the endorsed UnitedHealth Medigap insurance, alleges no inadequacies with the product. (TAC ¶¶ 30, 31.) The Complaint contains no allegations that the products Plaintiffs received, or that the membership benefits they paid for, were not "the best." In contrast to the plaintiff in *Hanberry* who alleged the shoes were defective because she slipped while wearing them, Plaintiffs here have not alleged that the endorsed products are in some way materially not "the best" insurance products based on objective characteristics.

**b. Rule 9(b)**

Specific allegations are necessary to describe the circumstances of the alleged fraudulent conduct. *See Kearns*, 567 F.3d at 112. General allegations of the circumstances surrounding fraud, and how it is fraudulent, are insufficient. *Id.* at 1127. "Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed

13

as a result of being subject to fraud charges; and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Id.* at 1125 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

In dismissing the first and second amended complaints, the court found that the allegations set forth a unified course of fraudulent conduct, and allowed leave to plead the "who, what, when, where, and how" of the alleged fraud. (Order I, at 12; Order II, at 11.) Indeed, Plaintiffs do not dispute that they must satisfy the heightened pleading requirements of Rule 9(b). Plaintiffs instead argue that "AARP Defendants have run a pervasive advertising and marketing campaign designed specifically to induce and trick senior consumers," and therefore, assert that they should not be required to provide an explanation for every advertisement. (Opp. at 19.) Plaintiffs urge this court to not require more specificity than currently presented in the Third Amended Complaint because this case is like *Comm. On Children's Television, Inc. v. Gen. Foods Corp*, 35 Cal. 3d 197 (1983) superseded on other grounds as stated in *Branick v. Downey Savings & Loan Ass'n*, 35 Cal. 4th 235 (2006). (Opp. at 18.) The court finds important deficiencies in the Complaint here that distinguish *Comm. On Children's Television* from this case.

In *Comm. On Children's Television*, the California Supreme Court observed that "certain exceptions [ ] mitigate the rigor of the rule requiring specific pleading of fraud." *Id.* at 217. There, the plaintiff alleged that defendants, General Foods Corporation and Safeway Stores, engaged in "fraudulent, misleading, and deceptive advertising in the marketing of sugared cereals." *Id.* at 204. The complaint alleged "thousands of misrepresentations in various media over a span of four years – representations which, while similar in substance, differ in time, place, and detail of language and presentation." *Id.* at 216. The court held that "[a] complaint which set out each advertisement verbatim, and specified the time, place, and medium, might seem to represent perfect compliance with the specificity requirement, but as a practical matter, it would provide less effective

14

notice and be less useful . . . ." *Id.* The court also stated that "[a] long-term advertising campaign may seek to persuade by cumulative impact, not by a particular representation on a particular date." *Id.* at 219.

Here, Plaintiffs allege that they purchased membership based on AARP's misrepresentations, yet, Plaintiffs have not pled facts setting forth when each named Plaintiff joined or renewed their AARP membership. Such basic information, at a minimum, would provide a timeframe for when each Plaintiff allegedly viewed the advertisements and relied on them to join or renew their AARP membership. In *Comm. On Children's Television*, Plaintiffs pointed out a campaign covering four years, while here, there is no indication of how long Plaintiffs may have viewed the alleged misrepresentations. *See id.* at 217.

Plaintiffs have also not articulated what advertisements they each saw and personally relied on. Such specificity was also required in *Comm. On Children's Television*, "[w]e believe, however, that the trial court could reasonably require plaintiffs to attach a representative selection of advertisements, to state the misrepresentations made by those advertisements, and to indicate the language or images upon which any implied misrepresentations are based." *Id.* at 219. While the Complaint includes sample advertisements with AARP's endorsement (TAC ¶ 27), Plaintiffs have not identified what language or images they relied on. Also, Plaintiffs do not include any sample AARP "solicitations and ads . . . in which AARP represented its non-profit status and advocacy role . . . " (TAC ¶¶ 29, 30, 31.) As the court interprets the complaint, Plaintiffs' fraud theory requires the existence of both representations, first, AARP's representations of itself as a non-profit whose mission is to protect seniors, and second, based on the first representation, Plaintiffs believed the endorsements represented "the best for seniors" and "irrespective of profits." *See supra* Part a(i)(1).

As an example of the specificity required for a claim sounding in fraud under the UCL and FAL, the court looks to *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009).

15

There, the plaintiff alleged that Ford Motor Company marketed Certified Pre-Owned Vehicles by representing that they were more rigorously inspected and therefore safer. *Id.* Plaintiff alleged that he was "exposed" to the representations through various marketing channels, including television, at the dealership, and through sales personnel. *Id.* at 1125-26. The Ninth Circuit held that the plaintiff failed to specify "which sales material he relied upon in making his decision[,] . . . who made the statement or when [the] statement was made . . . [thus] fail[ing] to articulate the who, what, when, where, and how of the misconduct alleged." *Id.* at 1126.

Plaintiffs here have similarly failed to articulate the who, what, when, where, and how of the alleged misconduct. As discussed above, Plaintiffs do not provide any representative ads containing the first alleged misrepresentation. Plaintiffs also do not specifically allege which of the advertisements in Paragraph 27, advertisements showing the AARP endorsement, they viewed and relied on, or through which channels they viewed the endorsements. Plaintiffs only generally allege that "[Plaintiffs] saw the solicitations and ads from AARP which appear like the ones set forth in Paragraph 27." (TAC ¶ 27.) The court does not require that Plaintiffs allege the specific day or time they viewed the advertisements. *See Comm. On Children's Television*, 35 Cal. 3d at 216. Plaintiffs are, however, required to provide allegations of *when* they joined, *what material* they found important in their decision to join AARP, *what that material represented* to support their alleged beliefs of the endorsements, and *how* that representation was false. *See Kearns*, 567 F.3d at 1126. The court finds that Plaintiffs have not met the particularity requirements of Rule 9(b).

**c. Amendment**

Plaintiffs have had ample opportunity to properly plead their claims and have failed to do so. The court has twice dismissed with leave to amend and has instructed Plaintiffs to plead with particularity as required under Rule 9(b). A court's discretion to deny leave to amend "is 'particularly' broad where the plaintiff has previously

16

amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). Therefore, the court denies further leave to amend.

**IV. CONCLUSION**

The motion to dismiss is GRANTED. The Third Amended Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: May 14, 2019

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE